32937. STATE OF GEORGIA v. ANDREWS et al.

MARSHALL, Justice.

This case draws into question the constitutionality of the local Act of the General Assembly creating an office of magistrate for the State Court of Cobb County (Ga. L. 1974, p. 2212). The Cobb Superior Court struck down the Act on various procedural and substantive, state and federal constitutional grounds. We disagree and reverse.

## I.
### Background.

This case began with the magistrate of the State Court of Cobb County issuing a warrant authorizing the search of the appellees' residence. The search warrant was executed, and from the record before us it appears that an assortment of illegal drugs was found in the appellees' possession. They were subsequently indicted by the Cobb County grand jury for several drug-related offenses. They then filed a pre-trial motion to suppress the evidence in Cobb Superior Court, arguing that the Magistrates Act was unconstitutional. The superior court agreed, and the court entered an order declaring the Act to be unconstitutional and suppressing all evidence obtained under the search warrant. This appeal is by the state from that order.

## II.
### Summary of the Acts.

What is now the State Court of Cobb County was originally known as the Civil and Criminal Court of Cobb County, and the Act creating this court is found at Ga. L. 1964, p. 3211. The provisions of this Act and the Act creating the office of magistrate, Ga. L. 1974, p. 2210, will be reviewed here as is necessary for determination of the issues which this case presents.

a. *An Act to create a court to be known as "Civil and Criminal Court of Cobb County"* (Ga. L. 1964, p. 3211).

The court was created under the provisions of Art. VI, Sec. VII, Par. I of the Constitution of 1945 (Code Ann. § 2-4201; Code Ann. § 2-3601, Constitution of 1976). Section 1 (Ga. L. 1964, p. 3211).

The court is given jurisdiction as to subject matter exercised by justices of the peace and justice courts in Georgia throughout Cobb County, and the office of the justice of the peace is abolished. In addition, the court is given jurisdiction to try and dispose of misdemeanor cases and certain civil cases, primarily where exclusive jurisdiction is not in the superior court and the amount in controversy is $300 or less. Section 2 (Ga. L. 1964, p. 3211); Section 7 (Ga. L. 1964, p. 3213); Section 28 (Ga. L. 1964, p. 3222).

Proceedings in criminal cases in state court are by

accusation made by the solicitor or assistant solicitor, or referral of indictment by the Superior Court of Cobb County. The court is empowered to issue bench warrants, and sits as a committal court upon all criminal warrants issued by the judge or clerk. Section 12 (Ga. L. 1964, p. 3216).

b. *An Act to amend an Act creating the State Court of Cobb County so as to create an office of magistrate* (Ga. L. 1974, p. 2212).

Pursuant to Art. VI, Sec. VII, of the Constitution of 1945 there is created the office of magistrate for the State Court of Cobb County. Section 1 (Ga. L. 1974, p. 2212). It is provided that the office of magistrate shall be to all intents and purposes a justice of the peace so far as to enable him to issue arrest and search warrants. The magistrate is also given authority as ex-officio justice of the peace to commit the offenders to jail or, in bailable cases, to admit them to bail. Section 2 (Ga. L. 1974, pp. 2212, 2213).

The magistrate is appointed by the majority of the judges of the State Court of Cobb County, and the magistrate serves at their pleasure. Section 3 (Ga. L. 1974, p. 2213). The magistrate is subject to rules and regulations adopted by the state court. Section 7 (Ga. L. 1974, p. 2214).

When conferred by the senior judge of the State Court of Cobb County, the magistrate is given authority to try all cases involving violations of Cobb County ordinances and state traffic laws. Section 10 (Ga. L. 1974, p. 2214).

III.

Trial Court's Rulings.

The multiple rulings of unconstitutionality made by the trial court are based on inconsistent premises and are internally inconsistent with one another. With this in mind, we shall proceed to a review of these rulings.

a. The procedural constitutional ground upon which the trial court struck down the Magistrates Act concerns the "Notice of Intention to Introduce Local Legislation." The notice of intention, which is attached to the Act, reads as follows: "Notice is hereby given that there will be introduced at the January-February-March 1973 Session of The General Assembly of Georgia, a bill to amend an

Act creating the State Court of Cobb County, formerly the Civil and Criminal Court of Cobb County, approved March 28, 1964 (Ga. L. 1964, p. 3211); and for other purposes." Ga. L. 1974, p. 2215. The trial court determined that the failure of this notice of intention to inform the citizenry of Cobb County that an office of magistrate was being created was in contravention of the requirements specified in Code Ann. § 2-1309 (Art. III, Sec. VII, Par. IX, Georgia Constitution of 1976).

The trial court expressly predicated this ruling on the underlying assumption that the office of magistrate was not an adjunct of state court but a separate and distinct tribunal. On this basis, the court concluded that the purpose of the Magistrates Act was so foreign to the Act it amended that the general notice provision did not fairly apprise the local citizenry of the nature of the enactment.

The trial court predicated the following rulings on the underlying assumption that the Magistrates Act only amended and expanded the state court and did not create a new court:

b. The trial court found Section 2 of the Magistrates Act to be in violation of the uniformity requirement provided for in Code Ann. § 2-3801 (Art. VI, Sec. IX, Par. I, Georgia Constitution of 1976). The reasoning behind this ruling was that both the office of magistrate and the state court are vested with the jurisdiction previously given the justices of the peace. The trial court viewed this as the creation of a "hybrid" or "two-tier" court disapproved by this court in such cases as *Fulton County v. Woodside,* 222 Ga. 90 (149 SE2d 140) (1966); *Wages v. Morgan,* 174 Ga. 158 (162 SE 380) (1931); *Law v. McCord,* 143 Ga. 822 (85 SE 1025) (1915); and *Grant v. Camp,* 105 Ga. 428 (31 SE 429) (1898).

c. The trial court found Section 3 of the Magistrates Act — which authorizes the majority of the judges of the state court to appoint the magistrate, who serves at the pleasure of the judges — to be an improper delegation of legislative authority to the judiciary in violation of the separation-of-powers mandate found in Code Ann. § 2-204 (Art. I, Sec. II, Par. IV, Georgia Constitution of 1976). The trial court cited as authority for this proposition, *City of*

*Atlanta v. Landers,* 212 Ga. 111 (90 SE2d 583) (1955).

d. The trial court found Section 10 of the Magistrates Act, which empowers the senior judge of the state court to confer upon the magistrate the authority to try cases involving violations of Cobb County ordinances and state traffic laws, to be an improper delegation of judicial authority to the magistrate in violation of Code Ann. § 2-3001 (Art. VI, Sec. I, Par. I, Constitution of 1976).

e. The trial court found that under the Magistrates Act, the magistrate would be in effect the "alter ego" of the state court judge and, therefore, not "neutral and detached" as required by the Fourth Amendment to the United States Constitution.

IV.

Disposition.

1. The trial court was in error in holding that the notice of intention appended to the Magistrates Act did not satisfy the notice requirement found in Code Ann. § 2-1309. We have recently held in *Andrews v. State,* 239 Ga. 531 (238 SE2d 73) (1977), that under the express terms of the Act the office of magistrate is a part of the state court. The Magistrates Act was, therefore, within the range of legislative enactment of an amendment to the Act creating the state court. The general notice under attack alerted the citizens of Cobb County to the intention to amend the original Act and thus gave notice of the broad range of legislative enactment. Under the principles laid down in *Smith v. Abercrombie,* 235 Ga. 741 (221 SE2d 802) (1975) and the cases cited therein, this notice of intention was sufficient to satisfy the constitutional requirement of Code Ann. § 2-1309.

2. The trial court was in error in finding the Magistrates Act to be in violation of the uniformity requirement found in Code Ann. § 2-3801 for the primary reason that this constitutional provision, by its express terms, exempts state courts from its operation.

3. The trial court was in error in holding that the magistrate is not "neutral and detached" within the meaning of the Fourth Amendment. See Shadwick v. Tampa, 407 U. S. 345 (92 SC 2119, 32 LE2d 783) (1972).

4. The trial court was in error in ruling that the section of the Magistrates Act making the magistrate

appointable by the state court judges improperly delegates legislative authority to the judiciary.

Certainly in this state the appointment and selection of judicial officers is not inherently or exclusively a legislative function. Our system for selecting judicial officers is primarily elective. Furthermore, other delegations to the judiciary of this type of appointive authority are not uncommon. The judges of superior court have been given authority to appoint other inferior judicial officials, i.e., judges pro hac vice, special masters, ex-officio justices of the peace; and United States District Court judges have statutory authority to appoint federal magistrates. We have not found any cases, nor have we been cited to any, holding these delegations of authority to be unconstitutional. The fact that the Cobb County magistrate is an adjunct of state court makes the General Assembly's delegation to the state court judges of the authority to appoint the magistrate particularly appropriate. The state court judge is not thereby invested with legislative power in violation of the State Constitution.

There is certain language in the *Landers* decision to the effect that the power to create state courts, including the selection of the necessary court officers, is a nondelegable legislative function. This language does give specious support to the ruling of the trial court under consideration. However, a closer reading of *Landers* shows that what was involved there was an attempt by the General Assembly to create a system of municipal traffic courts, subordinate to the will of the municipal authorities, and having jurisdiction to try offenses against the state. The Act creating these courts was held to be unconstitutional because only state courts have jurisdiction to try state cases. *Landers* involved municipal courts, but, as we held in our prior *Andrews* decision, the office of magistrate is a part of state court. *Landers* is, therefore, inapposite here.

5. The trial court was in error in ruling that the section of the Magistrates Act giving the magistrate authority to try cases involving violations of county ordinances and state traffic laws constitutes an improper delegation of judicial authority to the magistrate.

The magistrate is not precluded from exercising judicial authority over these cases, which are not within the exclusive jurisdiction of any constitutional court, because the magistrate, like a justice of the peace, is an inferior judicial officer. See *Ormond v. Ball*, 120 Ga. 916 (48 SE 383) (1904). See also Compton v. Alabama, 214 U. S. 1 (29 SC 605, 53 LE 885) (1908).

*Judgment reversed. All the Justices concur, except Jordan, J., who dissents as to Divisions 1 and 5 and the judgment.*

SUBMITTED OCTOBER 28, 1977 — DECIDED
JANUARY 19, 1978.

*Thomas J. Charron, District Attorney, Joseph L. Chambers, Assistant District Attorney,* for appellant.

*Barnes & Browning, Thomas J. Browning, Roy E. Barnes,* for appellees.